UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TERRY J. CUNNINGHAM, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 2:12-cv-85-JMS-WGH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Terry J. Cunningham applied for Disability Insurance ("DIB") and Supplemental Security Income benefits on May 6, 2008, alleging a disability onset date of August 15, 2007. His application was denied both initially and after reconsideration by the Defendant, Commissioner of the Social Security Administration (the "Commissioner"). Administrative Law Judge Tammy H. Whitaker (the "ALJ") held a hearing in September 2010, and later issued a decision that Mr. Cunningham was not entitled to disability benefits. Mr. Cunningham has filed this action under 42 U.S.C. § 405(g), asking the Court to review his denial of benefits.

## I.
### RELEVANT BACKGROUND

Mr. Cunningham was forty-eight years old at the time of his alleged disability onset. [Dkt. 15-6 at 2.] Mr. Cunningham claims that he is disabled because of seizures, hearing problems, emphysema, and confusion. [*Id*. at 7.]

Mr. Cunningham did not attend school past the tenth grade. [Dkt. 15-2 at 43, Dkt. 15-6 at 11, Dkt. 15-9 at 43.] He last worked in 2007 as a mover, a temporary position. [Dkt. 15-6 at 8,

Dkt. 15-2 at 45.]  Before that, Mr. Cunningham worked as a laborer in construction and as a meat cutter and dairy manager at a grocery.  [*Id.*]

At the administrative hearing, Mr. Cunningham testified that trouble with his hearing and bending at the waist prevented him from working.  [Dkt. 15-2 at 55.]  He claims to experience two or three seizures each year, the last one occurring in March, 2010, and the seizures produced soreness in both arms.  [*Id.* at 46-47, 56.]  He stated that the seizures kept from ever obtaining a drivers license.  [*Id.* at 44.]  Mr. Cunningham also testified that he experienced depression and regular shortness of breath, but that both conditions were improved by medication.  [*Id.* at 48, 54-55.]  He claimed he could sit for at least 45 minutes and stand for 15-20 minutes, but he could not bend at all and needed to rest after walking one city block.  [*Id.* at 45-46.]  Mr. Cunningham testified that he is able to care for himself and do many household chores.  [*Id.* at 49-50, 57.]

Mr. Cunningham has received medical treatment, and the relevant portions of that treatment will be described in detail as needed to address the issues raised on appeal.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits.  Otherwise the Court will remand the matter back to the Social Security Administration ("SSA") for further consideration; only in rare cases can the Court actually order an award of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [she] perform h[er] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).  After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments.  The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work.  If the claimant cannot, the ALJ uses the RFC at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e),(g). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner.  *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined that Ms. Carter was not disabled.  [Dkt. 15-2 at 32.]

At step one of the analysis, the ALJ found that Mr. Cunningham had not engaged in substantial gainful activity[1] since the alleged onset date of his disability.  [*Id.* at 23.]

At step two, the ALJ identified six severe impairments[2] from which Mr. Cunningham suffers:   seizure disorder; chronic obstructive pulmonary disease ("COPD"); hearing loss;

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a)-(b) and § 416.972(a)-(b).

[2] An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

3

emphysema; obesity; depression and anxiety; and a history of learning disorder.  [*Id*.]  These impairments caused "more than minimal functional limitations."  [*Id*.]  The ALJ also found Mr. Cunningham's left ear epidermal cyst to be nonsevere and his claimed impairments of right knee pain and problems with memory to not be medically determinable or otherwise severe impairments.  [*Id*. at 23-24.]  The ALJ specifically stated that the cyst did not result in more than minimal limitations, Mr. Cunningham's complaints of right knee pain were not supported by clinical signs or other medical evidence, and Dr. Paul Esguerra's statement that Mr. Cunningham has problems with memory was not supported by medical evidence or even a consultative examination to confirm the problems.  [*Id*. at 23-24.]

At step three, the ALJ concluded that Mr. Cunningham's severe impairments did not meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1 listings" or "listings").  Mr. Cunningham does not challenge the ALJ's conclusions that Cunningham did not meet or equal:  (1) listing 3.02 for chronic pulmonary insufficiency; (2) listing 11.02 for convulsive epilepsy; (3) listing 11.03 for nonconvulsive epilepsy; and (4) listings 1.00Q, 3.00I, and 4.00I for musculoskeletal, respiratory, and cardiovascular impairments, respectively, due to his obesity.  [*Id*. at 24-25.]  Mr. Cunningham does, however, challenge the ALJ's determinations that he did not meet or equal listings 3.03, 12.04, and 12.06 for asthma, affective disorders, and anxiety disorders, respectively.  [*Id*. at 24-26.]

The ALJ found that Mr. Cunningham had an RFC to perform light work with several limitations.  [Dkt. 15-2 at 26.]  Specifically, the ALJ concluded that Mr. Cunningham:  could only sit for 45 minutes at a time and stand or walk for 30 minutes at a time; could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; could occasionally balance, stoop, crouch, kneel, or crawl; must avoid all exposure to excessive noise and concentrated exposure to temperature

extremes, fumes, odors, dusts, and gases; was limited to simple, routine, and repetitive tasks, and needed a work environment with simple work-related decisions, free of fast paced production requirements, and few, if any, work place changes.  [*Id*.]  In formulating the RFC, the ALJ gave great weight to parts of Dr. Esguerra's opinion, as that of Mr. Cunningham's treating physician, that were consistent with the other medical evidence and little weight to those parts that were not.  [*Id*. at 30.]

In connection with the RFC assessment, the ALJ made an adverse credibility finding regarding Mr. Cunningham's statements concerning the intensity, persistence, and limiting effects of his symptoms "to the extent they are inconsistent with the above residual functional capacity because, for example, they are not consistent with the medical evidence or the claimant's level of activity."  [*Id*. at 27.]

At step four, the ALJ determined that Mr. Cunningham is unable to perform any past relevant work.  [*Id*. at 31.]  However, at step five, the ALJ concluded that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Mr. Cunningham could perform.  [*Id*. at 31-32.]  The ALJ relied on the testimony of the Vocational Expert ("VE") that Mr. Cunningham could perform the jobs of apparel sorter, packing line worker, and housekeeper.  [*Id*. at 32.]  Based on these findings, the ALJ concluded that Mr. Cunningham was not disabled.  [*Id*.]

## IV.
### DISCUSSION

Mr. Cunningham raises four main arguments on appeal:  (1) the ALJ improperly discounted portions of Dr. Esguerra's opinion, violating the treating physician rule; (2) the ALJ's RFC determination was not supported by substantial evidence; specifically, the mental component of Mr. Cunningham's RFC was not supported by substantial evidence, and the ALJ's

failure to consult an expert violated SSR 96-6p; (3) the ALJ performed a perfunctory disability analysis at step three and failed to consult an expert; and (4) the ALJ's credibility assessment of Mr. Cunningham was flawed and unreasonable.

### A.  Weight of Dr. Esguerra's opinion

In her decision, the ALJ gave great weight to the parts of Dr. Esguerra's opinion that were consistent with other objective medical evidence, but declined to give his opinion controlling weight since there were parts of his opinion that were not consistent with the medical evidence.  [Dkt. 15-2 at 30.]  Mr. Cunningham argues that the ALJ erred by only addressing part of Dr. Esguerra's opinion—specifically, Dr. Esguerra's opinion that Mr. Cunningham had neck limitations, despite there being no evidence of neck impairment in the record—in declining to give his opinion controlling weight.  [*Id.*]  Mr. Cunningham claims the ALJ failed to explain why the additional work limitations opined by Dr. Esguerra were inconsistent with the rest of the medical evidence.  He also challenges the ALJ's alleged failure to address Dr. Esguerra's conclusion that Mr. Cunningham would require frequent unscheduled breaks and three absences each month.  [Dkt. 15-9 at 29-30.]  Finally, Mr. Cunningham claims the ALJ reversed the prescribed analytical process by declining to accord the opinion controlling weight because it conflicts with certain aspects of Mr. Cunningham's RFC.  These failures would be grounds for remand.  *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012).

The Commissioner responds that the ALJ declined to give controlling weight because parts of his opinion had no internal or external support, and she assigned great weight to those portions of Dr. Esguerra's opinion that were supported by record evidence.  [Dkt. 30 at 10 (citations omitted)].  Therefore, the ALJ properly applied the treating physician rule.  Even assuming *arguendo* that she had not, the Commissioner claims that since Mr. Cunningham does

not show how reconsideration of Dr. Esguerra's opinion would change the outcome of the case, he has not been harmed by the ALJ's error, and remand is not appropriate.

The treating physician rule governs the weight given to Dr. Esguerra's opinion. His opinion is to receive controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2).[3]  If it is inconsistent or not well-supported, the ALJ must consider several factors in deciding how much weight to give the opinion, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2nd Cir. 2004) (citing 20 C.F.R. § 404.1527(d)).  An ALJ who concludes that the treating physician's opinion is inconsistent with or unsupported by other evidence must provide an explanation, "and [her] failure to do so constitutes error."  *Clifford*, 227 F.3d at 870.  The Commissioner cannot rely on evidence or argument on which the ALJ did not rely to support the ALJ's decision.  *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Nonetheless, the ALJ need only minimally articulate her reasons for assigning lesser weight to a treating source opinion, *Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir. 2008), and the ALJ met her burden in this case.  She concluded that no record evidence supported Dr. Esguerra's opined neck movement limitations.  [Dkt. 15-2 at 30, 15-9 at 30.]  In so concluding, the ALJ extensively discussed the findings of State Disability Determination Services ("DDS") consulting physician Drs. Mubashir Khan, who assigned no neck limitations to Mr. Cunningham.

---

[3] The treating physician rule was codified at 20 C.F.R. § 404.1527(d) at the time the ALJ made her decision.  Subsequently, the rule was re-codified at 20 C.F.R. § 404.1527(c).

[Dkt. 15-7 at 51.]   Thus, the ALJ's decision not to grant controlling weight was reasonable and more than minimally articulated.

For the second step, the ALJ properly discounted the above-mentioned inconsistent evidence and gave great weight to Dr. Esguerra's opinion that Mr. Cunningham should be limited to light work.  In formulating Mr. Cunningham's RFC, she accepted Dr. Esguerra's recommended limitations with the limits on sitting and standing with occasional stooping or crouching.  [Dkt. 15-9 at 28-30.]  The ALJ emphasized that great weight was given precisely because Dr. Esguerra was Mr. Cunningham's treating physician.  [Dkt. 15-2 at 30.]  It is clear that, while the language in the ALJ's decision may suggest that the RFC was determined before her analysis of Dr. Esguerra's opinion, she not only analyzed his opinion before determining Mr. Cunningham's RFC, his opinion was a key determinant in his RFC.

The ALJ engaged in an extensive and balanced analysis of Dr. Esguerra's opinion.  Any language suggesting that his opinion was evaluated against a predetermined RFC is harmless.[4] The court therefore finds the ALJ did not err in weighing Dr. Esguerra's opinion.

**B.  Whether the ALJ's RFC determination was error**

**1.   Whether the RFC assessment  was supported by substantial evidence**

Mr. Cunningham accuses the ALJ of failing to properly explain why he discounted parts of Dr. Esguerra's opinion and ignoring other parts that would have disqualified him from full-

---

[4] The Court agrees with Mr. Cunningham that the ALJ failed to expressly evaluate Dr. Esguerra's opined limitations on sitting, standing, or walking or the frequency of unscheduled breaks and days absent from the workplace.  [Dkt. 15-2 at 30; Dkt. 15-7 at 27-31.]  However, the ALJ's above analysis presents a logical bridge from the evidence to her conclusion, and the Court cannot reasonably conclude that the ALJ cherry-picked evidence to support the weight she gave to Dr. Esguerra's opinion.  *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted).  Furthermore, as discussed *infra*, the limitations opined by Dr. Esguerra lack internal consistency or external support in the record evidence, so the ALJ did not err in discounting those portions of Dr. Esguerra's opinion.  *Id*. at 424-25 (citing 20 C.F.R. § 404.1527(d)(2); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

time work.  According to Mr. Cunningham, the ALJ cherry-picked evidence from Dr. Esguerra's opinion, "played doctor," *Clifford v. Apfel*, 227 F.3d at 870, and presented a flawed hypothetical to the VE.  [Dkt. 26 at 21.]  Had the ALJ incorporated all of Dr. Esguerra's findings and not given the opinions of Dr. Khan and fellow DDS physician Dr. Joseph Gaddy[5] "some weight," [*id.*], Mr. Cunningham argues that his RFC would have been so limited that the VE would have concluded that there were no significant jobs he could perform.  Mr. Cunningham contends that the ALJ's improper assessment caused error at steps three and five of her analysis.  The Commissioner responds that the "the ALJ relied on:  opinions by Drs. Esguerra, Khan, and [DDS examining psychologist J.] Gange; over ten years of treatment records; and Plaintiff's own reported symptoms."  [Dkt. 30 at 12.]  Therefore, substantial evidence supported the ALJ's RFC determination.

Mr. Cunningham's contention is meritless.  As discussed above, the ALJ properly weighed Dr. Esguerra's opinion using the treating physician rule, and Mr. Cunningham proffers no reason why the opinions of Drs. Khan and Gaddy should have been discounted.  Dr. Khan's opinion constituted substantial evidence upon which the ALJ could base her RFC.

Moreover, Mr. Cunningham both mischaracterizes the evidentiary burden and fails to show prejudice from any error the ALJ may have made in her RFC determination.  Mr. Cunningham must show Dr. Esguerra's opined limitations—even those not discussed by the

---

[5] Neither Dr. Gaddy nor his opinion [Dkt. 15-7 at 82-89] was mentioned explicitly in the ALJ's decision.  The ALJ referenced the "residual functional capacity conclusions reached by the physicians employed by the [DDS] also supported a finding of 'not disabled'" [Dkt. 15-2 at 30], and assigned the opinions of the DDS consulting physicians (Drs. Khan and Gaddy) "some weight."  [*Id.*]  Cunningham, however, does not claim the ALJ's evaluation of Dr. Gaddy's opinion was inadequate; rather, he objects only to the weight given to the DDS opinion.  [Dkt. 26 at 21.]  Because Cunningham did not object, and Dr. Khan's opinion by itself constitutes substantial evidence upon which the ALJ could rely, the ALJ's failure to discuss Dr. Gaddy's opinion is harmless.

ALJ—were internally and externally consistent, such that reliance on his opinion was reasonable. Dr. Esguerra failed to explain how his treatment history supported such frequent unscheduled breaks and absences from work, and Mr. Cunningham fails to point to other record evidence that supports Dr. Esguerra's conclusion.  While Mr. Cunningham claims that the ALJ should have more explicitly stated why he was rejecting Dr. Esguerra's conclusions as to Mr. Cunningham's ability to sit, stand, or walk [Dkt. 15-9 at 28-29], Dr. Esguerra listed no clinical or objective observations supporting such marked restrictions.  Without any internal or external support for his conclusions, Mr. Cunningham does not explain how a more thorough review of Dr. Esguerra's opinion would entitle those sections to more credibility and, consequently, a finding of permanent disability.  This failure to show any harm means there is no ground for remand. *Cannon v. Apfel*, 213 F.3d 970, 977-78 (7th Cir. 2000); *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

Since substantial evidence supported the ALJ's physical RFC determination and the ALJ did not commit legal error, the court affirms that determination.  Consequently, the hypotheticals presented to the VE were not flawed, and the ALJ did not err in relying on the VE's testimony in her Step Five determination.

### 2. Whether the Mental RFC determination was supported by substantial evidence or the ALJ violated SSR 96-6p by failing to consult an expert

The 2008 evaluation of Mr. Cunningham by Dr. Gange was the only psychological opinion in the record.  [Dkt. 15-7 at 55-67.]  It contained no psychological restrictions or severe impairments, and the ALJ did not find Mr. Cunningham's testimony consistent with the record evidence, which showed no history of depression and anxiety.  [Dkt. 15-2 at 29.]  However, the ALJ's mental RFC determination imposed limitations on Mr. Cunningham's pace, interpersonal interactions, and capability for decision-making or to adapt to changes.  [*Id*. at 26.]  Since there

10

was no other record evidence upon which the ALJ could rely in formulating Mr. Cunningham's mental RFC, Mr. Cunningham claims the ALJ failed to properly develop the record or build a logical bridge between the evidence and her conclusion. *Clifford*, 227 F.3d at 872 (7th Cir. 2000).

Mr. Cunningham further claims that the ALJ and SSA Appeals Council ("AC") violated Social Security Ruling ("SSR") 96-6p. SSR 96-6p directs the ALJ or AC to consult a medical expert when new evidence is presented that could change the ALJ's decision as to whether a claimant's impairments meet or equal an Appendix 1 listing. 1996 WL 374180, *4 (Jul. 2, 1996). In this case, Mr. Cunningham opines, the ALJ did not solicit the opinion of a medical health expert despite the gaps in the medical record, and the AC did not consult a psychologist after he presented new evidence of severe anxiety and depression. [Dkt. 15-9 at 32-47]. Therefore, he argues, the mental health component of his RFC was not supported by substantial evidence, the ALJ and AC violated SSA regulations, 20 C.F.R. §§ 404.1527, 416.927, and the ALJ's decision must be remanded. The Commissioner counters that the opinions of Drs. Gange, Esguerra, and Khan, along with Mr. Cunningham's treatment records, constituted substantial evidence upon which the ALJ could base the mental RFC component. Moreover, Mr. Cunningham has not shown how an additional opinion would have resulted in a more restrictive RFC, and the AC's decision on the post-hearing evidence is not subject to judicial review.

The court is not persuaded by Mr. Cunningham's arguments. The ALJ noted that Mr. Cunningham: (1) only occasionally took prescribed antidepressants [Dkt. 15-2 at 29]; (2) never sought treatment by or was referred to mental health specialist [*id*.]; (3) declined an

antidepressant prescription in September 2005[6] [*id*.; Dkt, 15-7 at 7]; (4) had no record of inpatient treatment [*id*.]; (5) initially alleged only confusion, not depression or anxiety [*id*., Dkt. 15-6 at 7]; and (6) only rarely mentioned mental symptoms to Dr. Esguerra.  [*id*., Dkt. 15-9 at 19.]  In doing so, the ALJ evaluated the opinions of Drs. Esguerra, Khan, and Gange.  Moreover, while Dr. Gange, as DDS examining psychologist, submitted the only strictly psychological opinion on the record, he reviewed the entire record to that point and found no record evidence to support disabling confusion or any other indication of mental disability.  [Dkt. 15-7 at 67.]

Furthermore, Mr. Cunningham has not demonstrated how he was prejudiced by any failure to develop the record.  The ALJ assigned Mr. Cunningham a more restrictive mental RFC than if he had followed Dr. Gange's evaluation, which found no disabling limitations, or if he had fully discounted Mr. Cunningham's statements.  [Dkt. 15-2 at 26, 29.]  Mr. Cunningham has not suggested what evidence would support a more restrictive RFC finding than what the ALJ assigned; without this, there is no ground for remand.  *Cannon*, 213 F.3d at 977-78, *Binion*, 13 F.3d at 246.

The AC also did not commit reversible error.  The evidence submitted regarding his treatment for anxiety and depression at Hamilton Center covered the period between October 2010 and March 2011, after the ALJ hearing.  The AC reviewed his records and concluded there was no reason to disturb the ALJ's decision, nor was there a need to consult an additional expert to determine whether the ALJ erred in her step three determination.  This is a discretionary decision not subject to review.  *Getch v. Astrue*, 539 F.3d 473, 483-84 (7th Cir. 2008).  The court therefore finds affirms the RFC determination.

---

[6] The ALJ stated that Mr. Cunningham declined the medication in September 2008, but there is no treatment record from that month, and it is clear from reviewing the record that she mistook the year on Dr. Esguerra's report.

**C.  Whether the ALJ's disability analysis at step three was perfunctory and flawed**

**1.  Listing Requirements and ALJ Findings**

At step three, the ALJ found that Mr. Cunningham's severe impairments did not meet Appendix 1 listing 3.03 for asthma and did not meet or equal listings 12.04 and 12.06 for affective and anxiety-related disorders, respectively.  [Dkt. 15-2 at 24-26.]  For a claimant to meet or equal listing 3.03, the claimant must either have chronic asthmatic bronchitis (evaluated using the same criterion as COPD), 20 C.F.R. Part 404 Subpart P Appendix 1 Listing 3.03A, or asthma attacks requiring physician intervention at least once every two months or six times over a twelve-month period, despite following prescribed treatment.  *Id*. at Listing 3.03B.  The ALJ found no evidence that Mr. Cunningham had chronic asthmatic bronchitis or that he had required medical attention with the required frequency.  [Dkt. 15-2 at 24.]

Since the ALJ determined Mr. Cunningham suffered from depression and anxiety [*id*. at 23], to meet or equal listing 12.04 Mr. Cunningham would have to demonstrate his depression caused at least two of the following:

 1. Marked restriction of activities of daily living; or
 2. Marked difficulties in maintaining social functioning; or
 3. Marked difficulties in maintaining concentration, persistence, or pace; or
 4. Repeated episodes of decompensation, each of extended duration.

20 CFR Part 404 Subpart P Appendix 1 Listing 12.04(B).  In the alternative, Mr. Cunningham could meet or equal listing 12.04 by showing:

 Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
  1. Repeated episodes of decompensation, each of extended duration; or
  2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

13

3. Current history of 1 or more years' inability to function outside a highly
supportive living arrangement, with an indication of continued need for such an
arrangement.

*Id*. at Listing 12.04(C).  To meet or equal listing 12.06, Mr. Cunningham must prove his anxiety

caused at least two of the consequences from Listing 12.04(B), *id*. at Listing 12.06(B), or

resulted in a "complete inability to function independently outside the area of [his] home."  *Id*. at

Listing 12.06(C).  Episodes of decompensation are defined as "exacerbations or temporary

increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by

difficulties in performing activities of daily living, maintaining social relationships, or

maintaining concentration, persistence, or pace."  *Id*. at Listing 12.00(C)(4).  For "repeated

episodes of decompensation, each of extended duration," *id*. at Listing 12.04(B)(4), Mr.

Cunningham would have to have suffered "three episodes within one year, or an average of once

every four months, each lasting for at least two weeks."  *Id*. at Listing 12.00(C)(4).

The ALJ found that Mr. Cunningham experienced only mild restrictions in his daily

living, mild difficulties in social functioning, and moderate difficulties in maintaining

persistence, pace, or concentration.  [Dkt. 15-2 at 25-26.]  She also concluded Mr. Cunningham

suffered no episodes of extended duration decompensation and was not completely unable to

function outside his home.  [*Id*. at 26.]  Finally, the ALJ found Mr. Cunningham did not have a

history of chronic affective disorder in accordance with listing 12.04(C).  [*Id*.]

### 2.   Whether the ALJ performed a perfunctory analysis in her evaluation of whether Mr. Cunningham met or equaled listing 3.03

Mr. Cunningham argues that the ALJ erred in his assessment of whether he equaled

listing 3.03 for asthma by merely stating, without discussion, that he did not meet the listing.  [*Id*.

at 24.]  From October 2009 until July 2010, Mr. Cunningham was seen six times by his primary

care physician for wheezing and shortness of breath six times.  [Dkt. 15-8 at 3-9, 11, 15-16, Dkt.

15-9 at 20.]   A Pulmonary function test and x-ray showed evidence of airway obstruction and emphysema.  [*Id*. at 4-8.]  Mr. Cunningham states that Dr. Gaddy did not get to view all source records and incorrectly opined that his COPD was only mild [Dkt. 15-7 at 87], in contrast with pre-hearing diagnostics that showed "marked" emphysema.  [Dkt. 15-7 at 37-38, Dkt. 15-8 at 4-8].  In light of this, Mr. Cunningham claims that the record evidence required the ALJ to solicit an additional medical opinion, so that his decision would be based on substantial evidence, and at least explain why he did not equal the listing.

The Commissioner replies that there are several reasons why the ALJ's decision that Mr. Cunningham did not meet Listing 3.03 was well-supported:  his claim of asthma is being raised for the first time on appeal, and there is no mention of it in the record [Dkt. 30 at 17]; an ALJ "may rule out a listing equivalence without relying on a medical opinion" [*id*.]; the ALJ was permitted to rely on the state agency physicians to determine whether he met or equaled Listing 3.03 [*id*. at 17-18]; and Mr. Cunningham has failed to show harm from any error.  [*Id*. at 18.]

Mr. Cunningham's argument does not accurately portray his burden of proof.  He must show that he met or equaled the Appendix 1 listing, *Sullivan v. Zebley*, 493 U.S. 521, 529-31 (1990); *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2002), including all elements.  He has failed to do so.  Even accepting that he had six instances of shortness of breath requiring physician intervention over the last year, he must show all six instances constituted attacks. Attacks are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."   20 C.F.R. Part 404, Subpart P Appendix 1 Listing 3.00(C).  Mr. Cunningham concedes that the last two times he sought treatment, no invasive treatment was performed. [Dkt. 26 at 25-26.]

Therefore, he did not show the requisite six attacks.  Mr. Cunningham's failure to meet his evidentiary burden renders harmless any error the ALJ may have committed by failing to solicit an additional medical opinion or discuss why he did not equal listing 3.03.

### 3. Whether the ALJ erred by failing to consult a medical expert for listings 12.04 and 12.06

Mr. Cunningham claims the ALJ failed to fully develop the mental health portion of the administrative record, and thus her decision that Mr. Cunningham did not meet or equal listings 12.04 or 12.06 was error.  First, he alleges that the ALJ failed to explain the discrepancy between according some weight to Dr. Gange's review opinion, in which he found no psychological restrictions and opined that he did not meet or equal any psychological listing  [Dkt. 15-7 at 55-67], yet the ALJ determined he had some restrictions in living, social functioning, and concentration, persistence, and pace.  [Dkt. 15-2 at 25-26.]  The Commissioner argues briefly that even if the ALJ should have consulted an additional expert, the record contains no evidence that Mr. Cunningham had symptoms that would meet or equal Listings 12.04 or 12.06, so the additional medical expert would change nothing.  Therefore, remand is not appropriate.  [Dkt. 30 at 18.]

Mr. Cunningham's argument is baffling.  As noted *supra*, the ALJ assessed a more restrictive RFC than had he completely followed Dr. Gange's opinion.  Mr. Cunningham does not explain how he was prejudiced by this discrepancy, which appears to be in his favor.  He also does not offer any evidence that would support going beyond the ALJ's opined limitations and finding that his impairments met or equaled an Appendix 1 listing.  The ALJ extensively discussed Mr. Cunningham's daily activities[7] and symptoms and noted that Mr. Cunningham

---

[7] The Seventh Circuit has criticized ALJs for relying too heavily on a claimant's description of daily activities, and concluding from those activities that a claimant is capable of full-time work.

maintained concentration at the hearing and communicated well during his examination with Dr. Khan.  [Dkt. 15-2 at 25-26.]  This evidence, combined with Dr. Gange's opinion, constituted a reasonable basis for evaluating Mr. Cunningham's limitations and difficulties against the requirements in listings 12.04 and 12.06, and the Court sees no reason to disturb it.

Second, Mr. Cunningham claims that the ALJ erred in failing to order an additional psychological evaluation before the hearing.  He argues that this was unreasonable given his pre-hearing history of anxiety and depression, including taking Lexapro, and his testimony that he was suffering from profound confusion.  [Dkt. 15-7 at 103-104; Dkt. 15-8 at 3, 22, 34; Dkt. 15-9 at 20.]  Without this additional evaluation, Mr. Cunningham argues, the ALJ's decision that he did not meet or equal listings 12.04 or 12.06 was not supported by substantial evidence.

However, Mr. Cunningham's claim is unfounded, and the relief he seeks purely speculative.  It is undisputed that Dr. Gange's opinion could be relied on as substantial evidence, and Mr. Cunningham has not specified what new evidence was available to the ALJ at the time of the hearing that would have challenged Dr. Gange's opinion that he did not meet any Appendix 1 listing.  SSR 96-6p, 1996 WL 374180, *4 (Jul. 2, 1996).  Without such evidence, the ALJ was under no obligation to seek an additional opinion.

Moreover, he does not state how an additional reviewer—even one who finds his entire treatment history credible—would help him prove that he was unable to function socially, had experienced repeated episodes of decompensation, or how even slight changes in daily routine would cause decompensation.  20 C.F.R. Part 404 Subpart P Appendix 1 Listings 12.04(B-C),

---

*Hughes v. Astrue*, 2013 WL 163477, at *3 (7th Cir., Jan. 16, 2013).  However, unlike in *Hughes*, where the claimant was alleging disability due to physical impairments, activities of daily living are essential to determining whether a claimant meets or equals Listing 12.04(B) or 12.06(B). Moreover, the listed activities of daily living were consistent with the Function Report submitted by Ruth Cunningham, his mother, in May 2008.  [Dkt. 15-6 at 13.]  Therefore, the ALJ basing his step three analysis on Mr. Cunningham's testimony was not error.

12.06.   The Court agrees with the Commissioner that a new reviewing doctor could not reasonably conclude that Mr. Cunningham met or equaled listings 12.04 or 12.06.  [Dkt. 30 at 18.]   The Court therefore concludes that the ALJ's decision at Step Three was supported by substantial evidence and was the product of a thorough analysis of a complete evidentiary record. She also did not err in failing to solicit additional medical opinions, so the ALJ's step three finding must be upheld.

### D.  Whether the ALJs' credibility determination was unfounded

Finally, Mr. Cunningham argues that the ALJ evaluated his credibility by a flawed and unreasonable method.  A credibility determination is a two-step test the ALJ must undertake. First, the ALJ must determine whether underlying physical or mental impairments could reasonably be expected to produce a claimant's symptoms.  *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (quoting SSR 96-7p).  The ALJ found in favor of Mr. Cunningham on this step.   [Dkt. 15-2 at 27.]   Second, the ALJ must evaluate the "intensity, persistence, and functionality limiting effects of the symptoms" to determine whether a claimant can do basic work activities.  *Scheck*, 357 F.3d at 701 (quoting SSR 96-7p).  Mr. Cunningham takes issue with the ALJ's conclusion that his "symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment because, for example, they are not consistent with the medical evidence or the claimant's level of activity."  [Dkt. 15-2 at 27.] He notes similar "boilerplate language" has been criticized by the Seventh Circuit for seemingly determining a claimant's RFC and evaluating her credibility against it, rather than incorporating a claimant's credibility into her RFC.  *Bjornson*, 671 F.3d at 645-46.

Mr. Cunningham further claims that the ALJ failed to examine the whole record and drew several conclusions that were unsupported by the record.  First, the ALJ discounted Mr.

Cunningham's statements due to substantial inconsistencies in the reported frequency of seizures between his DIB application, records from his primary care physician, his hearing testimony, and a report from his 2008 consultative examination. [Dkt. 15-2 at 27-28.]  Mr. Cunningham argues the ALJ erred because she conceded that he had no intention to lie or mislead about the frequency of his seizures, and testified truthfully at the hearing.  [*Id*. at 28.]  Second, the ALJ discounted Mr. Cunningham's testimony about his persistent, daily, and debilitating shortness of breath [*Id*. at 48] because, despite rarely seeking medical treatment, he had an oxygen saturation level of at least 95% during two separate tests.  [*Id*. at 28.]  Mr. Cunningham argues this was improper because the tests were conducted more than three years before the hearing and that these outdated tests, combined with admitting that medication helps with shortness of breath, are not grounds for discounting his testimony.

Finally, the ALJ discounted Mr. Cunningham's purported psychological impairments, noting that he had never received inpatient treatment or treatment by a psychologist, rarely reported mental symptoms to Dr. Esguerra, and that he had only begun complaining of memory issues in July 2010.  [Dkt. 15-2 at 29.]  Mr. Cunningham claims that even accepting these reasons as true, it does not render his claims incredible or mean he can do simple repetitive work. [*Id*. at 31-32.]  This allegedly unreasonable credibility determination resulted in erroneous and flawed hypotheticals that invalidated the VE's testimony and the ALJ's Step Five analysis.

The Commissioner responds that the ALJ extensively discussed supporting evidence for her credibility determination [*Id*. at 27-31], which overcomes any error by using boilerplate language.  He further argues that the ALJ considered all the factors prescribed by SSR 96-7p, 1996 WL 374186, *3, and built a logical bridge between the evidence and her determination.

Thus, the credibility determination should be affirmed.  *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).

The ALJ's credibility determination is entitled to special deference.  *Scheck v. Barnhart*, 357 F.3d at 703; *see also Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court."  *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).  Consistent with Seventh Circuit authority, the Court will not disturb a credibility finding "unless it is 'patently wrong in view of the cold record.'"  *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) (quoting *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999).

When evaluating the credibility of an individual's statements, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96-7p, 1996 WL 374186, *3.  Under SSR 96-7p, the ALJ must assess the following:

> (1) The individual's daily activities; (2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) [f]actors that precipitate and aggravate the symptoms; (4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) [t]reatment, other than medication, the individual receives or has received for relief of pain or symptoms; and (6) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms; and (7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*  "[D]etermining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting SSR 96-7p).

For several reasons, the Court finds that the ALJ sufficiently evaluated Mr. Cunningham's credibility and built a logical bridge between the relevant evidence and her assessment.  First, the ALJ noted that Mr. Cunningham had made inconsistent statements regarding the frequency of his seizures and discounted those statements, even as she conceded that Mr. Cunningham had not intended to mislead her.  [Dkt. 15-2 at 28.]  Mr. Cunningham does not cite—and the Court cannot find—any case law suggesting that an ALJ must find deceptive intent in order to discount statements as inconsistent. The Court thus does not find the ALJ erred in discounting Mr. Cunningham's statements on seizure frequency.

The ALJ's discounting of Mr. Cunningham's statements about the severity of his shortness of breath was also proper.  The ALJ noted that Mr. Cunningham's blood oxygen saturation never tested below 95%, there had been no progression of the disease since at least 2005, and that medication improved the mild airflow obstruction he suffered.  [Dkt. 15-2 at 28, Dkt. 15-7 at 3, 5, Dkt. 15-8 at 4, 7, 29.]  Moreover, Dr. Khan's examination found Mr. Cunningham had clear lungs.  [Dkt. 15-7 at 51.]  Meanwhile, Mr. Cunningham failed to produce any evidence of serious lung disease, and the record evidence did not suggest he had uncontrolled lung disease.  Without such evidence, the ALJ's decision to not find Mr. Cunningham fully credible was reasonable.

Third, contrary to Mr. Cunningham's argument that the ALJ provided "an unsupported rationale" for discounting his credibility about his psychological symptoms, the ALJ cited at

least six pieces of record evidence that belied his claim that he was completely disabled from depression, confusion, anxiety, and memory issues. [Dkt. 15-2 at 29.] Notably, there were large gaps in the treatment record for the impairments, discrepancies between the symptoms claimed in his application and at the hearing, and his treatment notes rarely mentioned mental health issues. [*Id.*, Dkt. 15-6 at 7, Dkt. 15-9 at 20.] Finally, the ALJ noted that Mr. Cunningham's last job only ended because it was temporary. [*Id.* at 25, 30.] This adequate discussion of the required factors in SSR 96-7p means *Bjornson*, which was overturned in part for failing to adequately discuss and evaluate the claimant's credibility, 671 F.3d at 645-46, is inapplicable. The ALJ built a logical bridge between the evidence and her discounting of Mr. Cunningham's credibility, and the Court affirms her credibility finding.

## V.
## CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* For the reasons outlined above, the Court **AFFIRMS** the ALJ's decision denying Mr. Cunningham benefits. Judgment shall now issue accordingly.

03/14/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic distribution to ECF-registered counsel of record.**

22